IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CAROL J. FREDERICKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 5656 |
| | ) | |
| ADVENTIST LA GRANGE MEMORIAL | ) | |
| HOSPITAL, a/k/a ADVENTIST HEALTH | ) | |
| SYSTEM/SUNBELT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiff Carol J. Fredericks ("Fredericks") alleges that defendant Adventist La Grange Memorial Hospital (the "Hospital") terminated Fredericks's employment because of her age, in violation of the Age Discrimination in Employment Act ("ADEA"). Pending before the court is "Defendant's Motion for Summary Judgment," (Dkt. No. 27), which has been fully briefed by the parties. For the reasons set forth below, the Hospital's motion for summary judgment is granted and judgment is entered in favor of the Hospital on Fredericks's ADEA claim.

BACKGROUND

Fredericks was employed by the Hospital as a Radiographer/Radiography Services Technician for almost 35 years—from August 1976 until March 23, 2011. (Dkt. No. 29 ("Def.'s SMF") ¶ 1; see also Dkt. No. 32 ("Pl.'s Add'l Facts") ¶ 1.) At the time of her termination on March 23, 2011, Fredericks's direct supervisor was Karen Brown ("Brown"). (Def.'s SMF ¶ 17.) Brown, in turn, was supervised by Mike Kaitson ("Kaitson"), the Director of the

Hospital's Radiology Department. (*Id.*) Brown became Fredericks's supervisor on September 6, 2010. (*Id.* ¶ 18.) Brown's immediate predecessor was Kay McMahon ("McMahon"). (*Id.*)

It is undisputed that, prior to her termination, Fredericks was disciplined on multiple occasions for alleged violations of Hospital policy, as detailed below. The Hospital maintains an Employee Handbook, which includes a section titled "Rules of Conduct" and stresses the importance of practicing "outstanding customer service" and complying with the Hospital's policies and procedures. (*Id.* ¶¶ 5, 8, 9.) The Hospital also maintains a customer service program called "SHARE," which provides "Standards of Behavior" relating to customer service. (*Id.* ¶¶ 15-16.) In the Hospital's Rules of Conduct, employees are informed that failing to "comply with the expectations for customer service excellence (SHARE)" and the Hospital's policies and procedures are violations of the Hospital's Rules of Conduct and will result in discipline, up to and including termination. (*Id.* ¶¶ 8-9.)

On March 11, 2010,[1] Fredericks was written up by McMahon for "yelling in a pt. area" and "not perform[ing] exams in a timely fashion." (Def.'s Ex. A-26.) As described in both McMahon's report of the incident and in Fredericks's declaration in support of her lawsuit, Fredericks was returning from her lunch break when Joey Maher ("Maher"), lead tech, asked Fredericks to "hurry" and do a portable chest x-ray on a full cardiac arrest patient in the E.R. (*Id.*; *see also* Pl.'s Add'l Facts ¶ 11.) Fredericks, who still had a few minutes left on her break, responded that she needed to wash her hands. (Def.'s Ex. A-26; Pl.'s Add'l Facts ¶ 11.) Fredericks does not dispute that she yelled "I don't hurry" in a patient area during this incident, although she does dispute generally that she was loud or disrespectful at work. (Dkt. No. 31

---

[1] It is Fredericks's position that "she was subjected to excessive discipline during the years 2010 and 2011." (Dkt. No. 33 ("Pl.'s Resp.") at 2.) The court therefore declines to address disciplinary incidents prior to 2010 in its analysis of Fredericks's ADEA claim.

("Pl.'s Resp. to Def.'s SMF") ¶ 23; *see also* Pl.'s Add'l Facts ¶ 15.) Fredericks stated in her sworn declaration that it was Maher who "rudely and disrespectfully screamed" at Fredericks, and that Maher used Fredericks as a "fall guy or scapegoat" to cover up the fact that Maher did not fill the request immediately when it came in. (Pl.'s Add'l Facts ¶ 15.) Fredericks admits that the discipline she received with respect to the March 11, 2010 incident was not because of her age. (Def.'s SMF ¶ 24.)

Almost a year later, on January 20, 2011, Brown met with Fredericks to discuss an incident in which a patient complained that Fredericks gave the patient unsolicited medical advice about the patient's kidney stones while performing an x-ray exam. (Def.'s SMF ¶ 25; *see also* Pl.'s Add'l Facts ¶ 12.) Fredericks characterizes this discussion as a "conversation" in which Brown sought only to inform Fredericks of the patient's complaint. (Pl.'s Add'l Facts ¶ 12.) Although Brown told Fredericks that the discussion would not be in Fredericks's "permanent record," (*id.* ¶ 12),[2] it is undisputed that Brown also completed a "counseling and corrective action documentation" form with respect to the January 20, 2011 incident, signed by both Brown and Fredericks on January 21, 2011, describing the discussion as a "verbal counseling" issued to Fredericks for violating patient safety and ethical standards by working outside the scope of her authority as a Radiographer, and stating that "[a]ny further incidences of this behavior will not be tolerated and may result in additional disciplinary actions up to and including termination." (Def.'s Ex. A-27; *see also* Dkt. No. 35 ("Def.'s Resp. to Pl.'s Add'l Facts") ¶ 12; Def.'s SMF ¶ 25.) Fredericks disputes that she actually gave the patient any medical advice, but does not dispute that the patient made this complaint to Brown. (Pl.'s Resp.

---

[2] The Hospital objects to Brown's statement as inadmissible hearsay, but Brown's statement falls outside the definition of hearsay as a statement made by an opposing party. *See* F.R.E. 801(d)(2).

to Def.'s SMF ¶ 25.)  It is Fredericks's belief that Brown wrote up this incident "for the sole purpose of terminating [Fredericks] because of her age."  (Pl.'s Add'l Facts ¶ 13.)

On January 27, 2011, Brown issued Fredericks a written warning for violating the Hospital's SHARE Standards of Behavior.  (Def.'s SMF ¶ 29; *see also* Def.'s Ex. A-28.)  The warning was based on a complaint that Brown received regarding an incident in Dr. Zelby's operating room, where Fredericks was assisting.  (Def.'s SMF ¶ 30.)  According to the complaint, Fredericks made three unsuccessful attempts to take a satisfactory image, when Dr. Zelay asked Hospital staff to request additional help for Fredericks.  (*Id.*)  When Fredericks learned of this request, she loudly yelled at a nurse, "So you called for help?" and abruptly left the room.  (*Id.*)  The written warning states that, "despite counseling, Carol continues to challenge authority and is loud and disrespectful to staff."  (*Id.* ¶ 29.)  Again, Fredericks disputes generally that she was loud or disrespectful at work, and asserts that the accusation against her was "false."  (Pl.'s Resp. to Def.'s SMF ¶¶ 29-30; *see also* Pl.'s Add'l Facts ¶¶ 14-15.)  Fredericks does not dispute that Brown received the underlying complaint, however, and Fredericks admitted in her deposition testimony that Brown had no reason to believe that the complaint was false.  (Def.'s SMF ¶ 31; *see also* Def.'s Ex. A ("Fredericks's Dep.") at 91:13-92:19.)

On February 9, 2011, Brown noted in Fredericks's personnel file that she had verbally counseled Fredericks about gossiping about her (Fredericks's) co-workers and not repeating negative remarks, in reference to Brown's belief that Fredericks told another employee that Brown had been "really reaming out" a co-worker.  (Def.'s SMF ¶ 34.)

On February 16, 2011, Brown gave Fredericks a "Performance Evaluation" for 2010, rating Fredericks as low in almost every category, and noting that Fredericks "can be loud and

harsh." (Pl.'s Add'l Facts ¶ 4; Def.'s SMF ¶ 38; *see also* Def.'s Ex. A-12.) Brown also gave Fredericks a "Standards of Behavior Performance Evaluation" that same day, in which Brown noted that Fredericks "uses a very loud, harsh tone with staff and patients; Carol is very loud and talks about issues to anyone who will listen. She can be disrespectful of others; Carol is often heard talking very negatively about staff and physicians; shows a lack of respect for staff; Carol can be somewhat disrespectful and inappropriate." (Def.'s SMF ¶ 38; *see also* Def.'s Ex. A-12.) Fredericks felt the February 16, 2011, performance evaluation was both inaccurate and degrading. (Pl.'s Add'l Facts ¶¶ 4-5.)

Also on February 16, 2011, Brown put Fredericks on a "Work Improvement Plan," based on Fredericks's "continuing behavior and job performance issues." (Def.'s SMF ¶ 35; *see also* Def.'s Ex. A-29.) The Work Improvement Plan stated, "Carol is too loud, disrespectful of other staff. She lacks [consistency] in her imaging abilities, Carol must refrain from doing personal things during work such as puzzles." (Def.'s SMF ¶ 35.) Pursuant to the Work Improvement Plan, Fredericks was subject to a 90-day probationary period, and was instructed that possible consequences of future misconduct were suspension and termination. (*Id.* ¶ 37.) Again, Fredericks disputes generally that she was loud or disrespectful at work. (Pl.'s Resp. to Def.'s SMF ¶ 35.)

Six days later, on February 22, 2011, Fredericks met with Don Russell ("Russell"), from the Hospital's Human Resources Department, to complain that she was being harassed by Brown, based on "unjustified" disciplinary actions and Brown's broken promise to keep discipline "off the record." (Def.'s SMF ¶ 39; Pl.'s Add'l Facts ¶¶ 6-7.) Fredericks did not

complain to Russell that Brown's harassment was based on age. (Def.'s SMF ¶ 39.) Russell advised Fredericks to "work it out on [her] own." (Pl.'s Add'l Facts ¶ 7.)[3]

On March 1, 2011, Brown noted in Fredericks's personnel file that she had verbally counseled Fredericks about "the importance of speaking more quietly" in patient areas after Fredericks was heard loudly discussing a movie. (Def.'s SMF ¶ 40.) Again, Fredericks does not dispute that Brown made this note, but disputes generally that she was loud or disrespectful at work. (Pl.'s Resp. to Def.'s SMF ¶ 40.)

On March 16, 2011, Fredericks was assigned to x-ray a boy's right hand. (Pl.'s Add'l Facts ¶ 18.) The boy's mother complained about Fredericks's performance, and Brown ultimately concluded that during the incident Fredericks "appeared to ignore [the mother's] request for more shielding" for her son due to his existing thyroid problem. (Def.'s Ex. B-6; Def.'s SMF ¶ 42.) According to Fredericks, she had already double-shielded the boy prior to taking the x-ray, and "the boy's mother never suggested the double shielding." (Pl.'s Add'l Facts ¶ 22.) Fredericks testified at her deposition that the boy's mother was "very combative with [Fredericks]" and other Hospital staff, that she disregarded Fredericks's request to stay in a waiting room until the x-ray was completed, and that she "became ballistic" and ultimately "requested another tech to complete the x-ray." (*Id.* ¶¶ 18-21, 23.) Brown noted in Fredericks's personnel file that the mother and the patient subsequently left for another hospital. (Def.'s SMF ¶ 42; *see also* Def.'s Ex. B-6.)

Fredericks was terminated on March 23, 2011, on the stated grounds that Fredericks had exhibited poor patient care and unacceptable standards of behavior in connection with the March

---

[3] Again, the court overrules the Hospital's objection that Russell's statement is inadmissible hearsay. *See* F.R.E. 801(d)(2).

16, 2011 incident, which occurred while Fredericks was on her Work Improvement Plan. (Def.'s SMF ¶¶ 41, 43; *see also* Def.'s Ex. B-7.)

At the time of her termination, Fredericks was fifty-six years old. (Dkt. No. 28 ("Def.'s Mem.") at 1, n.1; *see also* Def.'s SMF ¶ 2.) Fredericks was replaced by younger employee Shelley Molfese ("Molfese"), and it is Fredericks's belief that Brown and Kaitson discriminated against Fredericks because of her age. (Pl.'s Add'l Facts ¶¶ 8, 27; Def.'s SMF ¶ 48.)[4] Fredericks is not aware of any derogatory or discriminatory comments regarding her age made by Brown or anyone else at the Hospital. (Def.'s SMF ¶ 49.) Fredericks acknowledged at her deposition that Brown's discharge decision was motivated, at least in part, by patient and co-worker complaints regarding Fredericks's job performance. (Def.'s SMF ¶ 52; Fredericks's Dep. at 66:20-67:19.) Fredericks is not aware of any other Hospital employee who received as many incidents of discipline as she had within a twelve-month period. (Def.'s SMF ¶ 51.)

Fredericks generally believes that younger employees John Lighter ("Lighter"), Marie Swendson ("Swendson"), and Molfese were treated better than Fredericks with regard to discipline. (Pl.'s Add'l Facts ¶¶ 8, 24-27; Def.'s SMF ¶ 50.) Fredericks witnessed Lighter physically attack another employee (Maher), and also witnessed Lighter leave the workplace without authorization, and contends that Lighter was not terminated for these infractions. (Pl.'s Add'l Facts ¶ 25.) Fredericks further asserts that Swendson received patient complaints regarding "behavioral misconduct incidents," and that Swendson likewise was not terminated as a result of these complaints. (*Id.* ¶ 26.) Fredericks does not know the disciplinary histories of Lighter, Swendson, or Molfese, or what level of progressive discipline these employees had

---

[4] Fredericks's complaint against Kaitson is based solely on the fact that he was Brown's supervisor. (Def.'s SMF ¶ 48.)

received prior to their alleged behavioral misconduct.  (Def.'s SMF ¶ 50; *see also* Def.'s Resp. to Pl.'s Add'l Facts ¶ 24.).)

Fredericks further believes that other Hospital employees over forty years old were also harassed, causing them to get terminated or to resign, including Nancy Nowak, Karen Verhunce, Larry Gunther, Craig Scott, Carol Florino, Mike Cole, and Karen Kodatt.  (Pl.'s Add'l Facts ¶ 28.)  Although each of these individuals had engaged in "behavioral misconduct" prior to their terminations or resignations, Fredericks is not familiar with their disciplinary histories or whether these individuals were the subject of patient complaints.  (Def.'s Resp. to Pl.'s Add'l Facts ¶ 28.)

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the initial responsibility of identifying materials in the record that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); see also Fed. R. Civ. P. 56(c)(1).  "To survive summary judgment, the nonmovant must produce sufficient admissible evidence, taken in the light most favorable to it, to return a jury verdict in its favor."  *Fleishman v. Continental Case Co.*, 698 F.3d 598, 603 (7th Cir. 2012).  In other words, it is the nonmoving party's burden "to identify specific facts in the record that demonstrate[ ] a genuine issue for trial."  *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 647 (7th Cir. 2011).  When ruling on a motion for summary judgment, the court "constru[es] all facts and draw[s] reasonable inferences in the light most favorable to" the nonmoving party.  *Mullin v. Temco Mach., Inc.*, 732 F.3d 772, 776 (7th Cir. 2013).

<u>ANALYSIS</u>

The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To prevail on a discrimination claim under the ADEA, a plaintiff must ultimately "prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBI Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009). It is therefore Fredericks's burden at the summary judgment stage to "show evidence that could support a jury verdict that age was a but-for cause of the employment action." *Fleishman*, 698 F.3d at 604. Fredericks may attempt to satisfying this burden by employing either the "direct" or "indirect" method of proof, as explained in detail below. *Mullin*, 732 F.3d at 776.

1.     <u>"But For" Causation Under *Gross*</u>

At the outset, the court addresses the Hospital's argument that Fredericks's ADEA claim is doomed due to an admission Fredericks made during her deposition. Specifically, Fredericks engaged in the following exchange with counsel, starting with defense counsel, Mr. Nardulli:

> Q.   Do you think that the discharge decision that was made was motivated at least in part by anything other than your age, like a patient complaint or a co-worker complaint?
>
> Mr. Smith:     Do you under[stand] the question?
>
> Mr. Nardulli: I understand that you've stated that you believe the discharge decision was based on your age?
>
> A.   That's correct.
>
> Q.   Do you believe that the discharge decision was also motivated, to some degree, at least in part, by –
>
> A.   Possibly, yes.

> Q.   Okay.   By something such as a patient or co-worker complaint, is that correct?
>
> A.   Yes.

(Fredericks Dep. at 66:20-67:19.)

Under the Supreme Court's interpretation of the ADEA in *Gross*, it is not enough for a plaintiff to prove that "age was simply a motivating factor" in an adverse employment action. *Gross*, 557 U.S. at 174.   Rather, age must be "the 'reason' that the employer decided to act," or "the 'but-for' cause of the employer's adverse decision."   *Id.* at 176.   "Put differently, age must have played a role in the employer's decision-making process and had a determinative influence on the outcome."   *Mullin*, 732 F.3d at 776 (quoting *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir. 2010)).

The Hospital argues that Fredericks's ADEA claim necessarily fails, because Fredericks admits that patient and co-worker complaints "were the basis, at least in part, for the discipline she received."   (Def.'s Mem. at 6.)   According to the Hospital, this admission "precludes [Fredericks] from establishing that her age was the 'but-for cause' of her discharge," as required by *Gross*.   (*Id.* at 7.)

This court is not persuaded by the Hospital's argument.   First, the Hospital's argument fails as a matter of logic.   For example, it is theoretically quite possible that the Hospital could have terminated Fredericks for disciplinary reasons that it otherwise would have overlooked, were it not for Fredericks's advanced age, leaving age as the "but-for cause" of Fredericks's termination.   Second, the Supreme Court's opinion in *Gross* does not preclude "mixed-motive" cases.   Instead, the Supreme Court in *Gross* explicitly clarified that such cases are to be held to the same burden of persuasion as "any other ADEA disparate-treatment action":

> Hence, the burden of persuasion necessary to establish employer liability is the same in alleged mixed-motives cases as in any other ADEA disparate-treatment action. A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision.

*Gross*, 557 U.S. at 177-78. The court therefore rejects the Hospital's argument that Fredericks's ADEA claim necessarily fails under *Gross*, due to Fredericks's admission that complaints by patients and co-workers played a part in the Hospital's decision to terminate her employment.

2. <u>Direct Method of Proof</u>

A plaintiff proceeding under the direct method of proof may rely on either direct evidence or circumstantial evidence to prove discrimination. *Mullin*, 732 F.3d at 776. Direct evidence is rare, and essentially "requires that the employer admit its discriminatory intent." *Id.* "The far more common case relies on circumstantial evidence, which allows the trier of fact to *infer* intentional discrimination by the decisionmaker." *Id.* (internal quotation marks omitted) (emphasis in original). "Circumstantial evidence typically includes '(1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.'" *Id.* (quoting *Sun v. Bd. of Trus. of Univ. of Ill.*, 473 F.3d 799, 812 (7th Cir. 2007)). "[F]undamentally the plaintiff must connect the circumstantial evidence to the employment action such that a reasonable juror could infer the employer acted for discriminatory reasons." *Fleishman*, 698 F.3d at 603.

In response to the Hospital's motion for summary judgment, Fredericks cites her own belief that she was disciplined, and ultimately terminated, because of her age. (Pl.'s Resp. at 4 ("Plaintiff feels that all the accusations against her were false and made up so as to terminate her because of her age.") (citing Pl.'s Add'l Facts ¶ 14).) As noted by the Hospital, at the summary judgment stage a plaintiff's subjective perception of her own performance or conduct is irrelevant. (Dkt. No. 34 ("Def.'s Reply") at 5 (citing *Denisi v. Dominick's Finer Foods, Inc.*, 99 F.3d 860, 865 (7th Cir. 1996)).) As the Seventh Circuit concluded in *Denisi*, a plaintiff's own deposition testimony "claim[ing] that his job performance was adequate . . . does not constitute affirmative evidence that can defeat a summary judgment motion." *Denisi*, 99 F.3d at 865. Moreover, although Fredericks generally argues that the discipline she received was unwarranted—e.g. that she was subjected to unfair treatment in general, a "bogus employee review" on February 16, 2011, and a "biased investigation" of the March 16, 2011 incident, (Pl.'s Resp. at 6)—Fredericks does not dispute that the disciplinary actions noted above occurred in response to specific complaints that Fredericks's supervisors received from Hospital patients and staff, and she has cited no evidence—other than her own perception of these incidents—that the complaints themselves were unfounded or false.

Furthermore, even if the court were to find that Fredericks has demonstrated a genuine dispute of material fact regarding whether she was unfairly disciplined (and ultimately terminated) by the Hospital, Fredericks would still bear the burden of proving that she was discriminated against *because of her age*. In her response brief, Fredericks argues that her age discrimination claim is supported by "remarks by decision-makers" and "deposition testimony," but her arguments on this point are vague, without citation, and impossible for the court to interpret. (*Id.* at 6-7.) Having reviewed the record as set forth in the parties' Local Rule 56.1

12

statements, this court is not aware of any remarks or testimony by Brown, Kaitson, or any other Hospital employee fitting this description. *See United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010) ("summary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact, and it was not the district court's job to sift through the record and make [claimant's] case for him").

The only specific evidence cited by Fredericks in support of her ADEA discrimination claim under the direct method of proof is the "direct promotion upon the termination of [Fredericks] going to Shell[e]y Molfese, a younger worker, to replace [Fredericks]." (*Id.* at 8.) The mere fact that Fredericks was replaced by a younger employee is, without more, simply not sufficient to permit a reasonable juror to "infer the [Hospital] acted for discriminatory reasons." *Fleishman*, 698 F.3d at 603. Although circumstantial evidence that an employee "was qualified for the job in question but was passed over in favor of a person outside the protected class" can be used to prove discrimination, if "the employer's reason is a pretext," *Sun v. Bd. of Trus. of Univ. of Ill.*, 473 F.3d at 812, as discussed below there is no reasonable suggestion of pretext in this case. Fredericks makes no additional arguments in support of her claim under the direct method of proof, and the court finds that Fredericks has failed to establish a genuine question of material fact requiring trial through this method.

3.    Indirect Method of Proof

To prevail under the indirect method of proof on summary judgment, a plaintiff must first establish a prima facie case of age discrimination by producing evidence that: (1) she is a member of the protected class (e.g. at least 40 years old); (2) she was performing well enough to meet her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees not in her protected class (e.g. at least 10 years younger than she

is) were treated more favorably. *Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 599-600 (7th Cir. 2010); *Filar v. Bd. of Educ. of City of Chicago*, 526 F.3d 1054, 1060 (7th Cir. 2008). The burden then shifts to the employer to offer "a legitimate, nondiscriminatory reason for the adverse employment action." *Naik*, 627 F.3d at 600. If the employer meets its burden, the plaintiff "must demonstrate that the reasons offered were pretextual." *Id.*

It is undisputed that Fredericks is a member of the protected class, and that she suffered an adverse employment action when she was terminated. The Hospital argues that Fredericks has failed to establish a prima facie case of age discrimination, however, because she has not demonstrated that she was meeting the Hospital's legitimate expectations at the time of her termination, and because she has not demonstrated that any similarly situated, younger employees were treated more favorably. The court addresses each argument in turn.

A.     Legitimate Expectations /Pretext

As in *Senske v. Sybase, Inc.*, Fredericks has argued that the Hospital "is lying about its legitimate employment expectations in order to set up a false rationale for terminating [her]." *Senske v. Sybase, Inc.*, 588 F.3d 501, 507 (7th Cir. 2009). Accordingly, "the question of whether [Fredericks] was meeting [the Hospital's] legitimate expectations merges with the question of [pretext]," *id.*, and the court addresses both together.

In this case, the Hospital has produced evidence that Fredericks was not meeting its legitimate expectations, due to her numerous disciplinary problems. Fredericks's only argument in response is that "[t]he whole incidents with the mother's complaints about the x-ray incident against [Fredericks] were unsubstantiated," leading to her termination. (Pl.'s Resp. at 10.) Fredericks does not cite any evidence in support of this argument, and it is undisputed that the mother was dissatisfied with Fredericks's conduct and performance on the date in question.

"To demonstrate a material issue of fact as to pretext, [Fredericks] must show that either (1) it is more likely that a discriminatory reason motivated the [Hospital] than the proffered non-discriminatory reason or (2) that [the Hospital's] explanation is not credible." *Mullin*, 732 F.3d at 778 (internal quotation marks omitted). In other words, Fredericks "must point to evidence that [the Hospital's explanations] are not the real reasons it fired [her], have no grounding in fact, or are insufficient to warrant the termination decision." *Senske*, 588 F.3d at 507. Fredericks has cited no evidence suggesting to a reasonable fact-finder that the Hospital did not actually terminate Fredericks's employment due to the March 16, 2011 incident, combined with Fredericks's prior disciplinary history. Although Fredericks argues that "a reasonable jury or trier of fact could infer from these facts that Defendant's explanations are not worthy of belief," (Pl.'s Resp. at 11), she does not identify the "facts" on which she is relying. Having considered the background facts summarized above, the court is not aware of any basis for a reasonable juror to determine that the Hospital's explanation was a pretext for discrimination. The court therefore holds that Fredericks has failed to adequately rebut the Hospital's non-discriminatory explanation for her termination.

B.    Similarly Situated, Younger Employees

For the sake of completeness, the court also addresses the fourth prong of Fredericks's prima facie case of age discrimination. "The 'similarly situated' test is a flexible, commonsense inquiry whose requirements vary from case to case." *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir. 2007). "Its purpose is to determine whether there are enough common factors between a plaintiff and a comparator—and few enough confounding ones—to allow for a meaningful comparison in order to divine whether discrimination was at play." *Id.*

In her response to the Hospital's motion for summary judgment, Fredericks notes her belief that Lighter, Swendson, and Molfese received more favorable disciplinary treatment than she did. As in *Barricks*, however, "[t]he record does not disclose the age of [these] employees, so it is impossible to know whether or not they are members of [Fredericks's] protected class." *Barricks*, 481 F.3d at 560. Additionally, the mere fact that Lighter and Swendson had each engaged in some incidents of "misconduct" is not enough to establish that they were similarly situated to Fredericks in this regard. At a bare minimum, Fredericks must establish that the named individuals were "similarly situated with respect to . . . conduct" and that they were "subject to the same standards." *Radue v. Kimberly-Clarke Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000). Because Fredericks has submitted no evidence suggesting that Lighter, Swendson, or Molfese had similar disciplinary histories to Fredericks's—and because Fredericks has admitted that she is not aware of any other Hospital employee who received as many incidents of discipline as she did within a twelve-month period—it is impossible for the court to determine whether these employees were subjected to more favorable disciplinary treatment than Fredericks. This is especially true for Swendson and Molfese, for whom Fredericks has failed to identify any specific acts of misconduct. For all of these reasons, the court finds that Fredericks has failed to demonstrate that the Hospital treated similarly situated, younger employees more favorably than Fredericks.

CONCLUSION

For the reasons set forth above, "Defendant's Motion for Summary Judgment" (Dkt. No. 27) is granted. Judgment is entered in favor of the Hospital on Fredericks's ADEA claim, which is dismissed with prejudice. All pending claims having been resolved, this civil case is hereby terminated.

16

ENTER:

JAMES F. HOLDERMAN
United States District Court Judge

Date:   January 8, 2014